_____ FILED _____ ENTERED
_____ OBGED _____ RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAY 1 1 2000

A BALL
CLERK U S DIST    CT COURT
DISTRICT OF MARY AND
BY                               DEPUTY

| | | |
|---|---|---|
| LAURA E. KESSLER | * | |
| | * | |
| v. | * | Civil No. JFM-98-3446 |
| | * | |
| BELL ATLANTIC COMMUNICATIONS | * | |
| AND CONSTRUCTION | * | |
| SERVICES, INC. | * | |
| | * | |

\*\*\*\*\*

## MEMORANDUM

Plaintiff Laura E. Kessler has brought this action against defendant Bell Atlantic

Communications and Construction Services, Inc. ("BACCSI"), pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e et seq. Specifically, Kessler claims that her former

employer, BACCSI, violated the Pregnancy Discrimination Act of 1978 by refusing to assign her

light duty after her obstetrician imposed medical restrictions that precluded her from performing

her job duties. Kessler also alleges claims under Maryland law for intentional infliction of

emotion distress and breach of contract. BACCSI has moved for summary judgment. The

motion will be granted.

I.

In March 1997, Kessler began working as a Multi Media Services Technician ("MMST")

for BACCSI. An MMST is responsible for installing and maintaining telephone equipment at

customers' residences and businesses. This work frequently involves climbing ladders or poles

in order to string wire. MMSTs receive their assignments from work orders issued by BACCSI's

control center and communicated through hand-held computer terminals. Typically, the work

orders specify whether the job assignment involves ground or pole work. However, in some



instances, the work order is incorrect or the customer asks the MMST to perform tasks that are not listed on the order.

In July 1997, Kessler informed her immediate supervisor, Dion Balaam, that she was pregnant. At that time Balaam took no action and Kessler continued working as a MMST. Then, in late October 1997, Kessler gave Balaam a note from her obstetrician that stated: "Laura Kessler is pregnant. She's due 3/28/98. I advise she not do any climbing (off ground work) after 10/29/97." Balaam conveyed the note to Kessler's second level supervisor, Celeste Butler, and informed her of Kessler's restrictions. Butler consulted with BACCSI's Human Resources Department to determine what should be done regarding Kessler's employment status. The Human Resources Department told Butler that: (1) BACCSI did not provide light duty assignments to employees who were expected to be subject to medical restrictions for more than a few days; (2) Kessler lacked enough time on the payroll to qualify for a leave of absence under the Family and Medical Leave Act; and (3) she should be asked to submit her resignation with the understanding that she would be rehired when she was physically able to perform her MMST duties.

Balaam communicated this information to Kessler and requested that she resign. Kessler advised Balaam that she wanted to keep working and that resigning would make her ineligible for unemployment benefits. BACCSI then terminated Kessler on November 21, 1997.

II.

An employee may use either direct or indirect methods to create a prima facie case of disparate treatment under Title VII. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). Kessler is unable to

2

provide any direct evidence of discrimination to establish a case of disparate treatment.[1]  In the

alternative, under the indirect method, Kessler must show that she "was treated more harshly

than others outside the class or [produce] other evidence that would support a reasonable

inference of discrimination." Kator v. Doctors Band, No. 96-2539, 1998 WL 7942, at *3 (4th Cir.

Jan. 13, 1998).  Kessler submits affidavits from Robin Rohls, a BACCSI dispatcher, and Donald

Fuller, a MMST, stating that male or non-pregnant MMSTs were given light duty assignments

which excused them from off-ground work.  However, these affidavits from Rohls and Fuller

only mention a few instances where MMSTs were excused from off-ground work for periods of a

couple of weeks or less.  BACCSI has already admitted that its policy was not to provide light

duty assignments to employees who were subject to medical restrictions that precluded them

from performing their job duties for more than a short duration.  Kessler has not identified any

MMSTs who were given light duty assignments for a period that even approaches the five

months for which she sought such an accommodation.  Her reliance on situations where BACCSI

granted short-term light duty assignments to a handful of MMSTs does not provide instances

where similarly situated non-pregnant employees received more favorable treatment.

Even if Kessler could establish a prima facie case of disparate treatment, she is unable to

refute BACCSI's legitimate, nondiscriminatory business reason for her termination.  BACCSI

stated that it was unable to effectively and economically assign MMSTs to light duty jobs

because BACCSI cannot always determine from the information received whether a job will or

---

[1]  In her deposition Kessler acknowledged that she was unaware of any comments or
actions by the supervisors involved in her termination, Balaam and Butler, that indicated a bias
against pregnant women or women in general.  See Kessler Dep. at 138-39.

will not require climbing above ground.[2]  Therefore, BACCSI could not guarantee that Kessler

only be assigned to ground work.  Kessler does nothing to refute this legitimate,

nondiscriminatory business reason.[3]  The affidavits and deposition testimony submitted by

Kessler only reaffirm that BACCSI could not guarantee her ground work.  For instance, Rohls

confirms that in about a quarter of the work orders it cannot be determined whether off-ground

work is required.  Kessler herself recalls that on a few occasions she was required to perform

pole work unexpectedly.  Therefore, even if Kessler could establish a prima facie case, she

cannot refute BACCSI's legitimate, nondiscriminatory business reason.

In addition to her disparate treatment claim, Kessler argues that she can proceed on a

theory of disparate impact due to BACCSI's light duty policy.  However, in order to show that a

facially neutral employment policy has a disparate impact on pregnant women, Kessler must

offer statistical evidence to prove causation.  See Watson v. Forth Worth Bank and Trust, 487

U.S. 977, 994 (1988).  Kessler has presented no such evidence.  Suppositions and hypotheses are

insufficient evidence to make a prima facie case of discrimination.  See Gregory v. Illinois, No.

87-10704, 1989 WL 105243, at *3 (N.D. Ill. Sept. 7, 1989) (stating that plaintiff may not argue

---

[2]  Kessler argues that she was not requesting light duty.  Instead, Kessler maintain that she was only prohibited from climbing poles, but that she could climb ladders and go into attics, basements, and crawl spaces.  Even though Kessler could perform many of the duties of an MMST, BACCSI still could not ensure that Kessler would not be dispatched to a job that required pole climbing.  Therefore, her attempt to distinguish her situation from light duty status is immaterial.

[3]  Kessler contends that since MMSTs must occasionally revisit job sites to correct work errors, BACCSI should have been willing to send additional MMSTs to sites where Kessler might discover that off-ground work was required.  Kessler's comparison only shows that BACCSI was trying to avoid even more MMST visits to job sites.  It does not show that BACCSI was acting illegitimately or discriminatorily.

4

disparate impact hypothetically, but instead must provide evidence of actual impact on pregnant employees of the employer's policy).

Kessler also alleges state law claims for breach of contract and intentional infliction of emotional distress. Kessler's reliance on BACCSI's general policy statements of equal employment opportunity does not support a breach of contract claim. See Ferragamo v. Signet Bank of Maryland, No. 88-3333, 1992 WL 219826, at *4 (D. Md. Mar. 17, 1992) (finding that "merely 'general statements of policy' are not definite enough to create a contractual right"). Furthermore, the collective bargaining agreement between BACCSI and Kessler's union created the terms and conditions of her employment. That agreement provided a grievance procedure that constituted Kessler's sole remedy for breaches of contract. See Davis v. Bell Atlantic-West Virginia, Inc., 110 F.3d 245, 248-49 (4th Cir. 1997).

Finally, Kessler's claim of intentional infliction of emotional distress is unavailing. To state a claim of intentional infliction of emotional distress, (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. See Batson v. Shiflett, 602 A.2d 1191, 1216 (Md. 1992). Maryland has determined that in a claim for intentional infliction of emotional distress, "recovery will be meted out sparingly, its balm reserved for those wounds that are truly severe and incapable of healing themselves." Id. The Maryland Court of Appeals has rarely upheld such claims and only when the case involved "truly egregious acts." Id. Following the mandate of the Maryland courts, I find that the defendant's conduct in terminating Kessler's employment did not rise to the level of being extreme or outrageous under Maryland law.

5

For these reasons, defendant BACCSI's motion for summary judgment is granted.  A separate order to that effect is being entered herewith.

_May 11, 2000_
Date

_J. Frederick Motz_
J. Frederick Motz
United States District Judge

6